## GILL v. SAUNDERS.

Opinion delivered October 20, 1930.

*McMillan & McMillan*, for appellant.

*D. H. Crawford*, for appellee.

MEHAFFY, J. W. D. Saunders and others filed a petition in the county court of Clark County for an order creating a stock district under and in accordance with the provisions of act 17 of the Acts of 1905 and amendments thereto. It was alleged that the territory was contiguous and comprised an area of more than 5 square miles. The territory which was to constitute the district

was described in the petition. A map of Clark County showing the district was filed with the petition. The county clerk certified that he had made a careful examination of the petition, checked the signers, and that the signers of the petition are a majority of the qualified electors living in said territory or having cultivated lands therein; that they had deposited money to pay the expense of making the order, and that a majority of the qualified electors of the subdivision sought to be made into a stock district had signed the petition.

G. A. Stoffer and others filed a remonstrance, alleging that they were qualified electors residing in the territory and opposed to the forming of the district, and asked the court not to make an order forming said territory into a stock district.

On March 29, 1929, the county court found that the territory described in the petition and shown on the plat comprised an area of more than five square miles; that the petition prayed for an order establishing a stock district; that the petition was signed by a majority of the qualified electors residing in said territory and all owners of cultivated lands within said district, who are qualified electors of Clark County but who reside without the district; that the petition was accompanied by the certificate of the clerk; that the petition clearly set forth that hogs, sheep and goats are all to be prohibited from running at large within the territory, which the court finds to be particularly described and the boundaries thereof clearly designated. The court also found that all the requirements of act 17 of the Acts of 1905 and the amendments thereof had been strictly and fully complied with, and that the petitioners were entitled to have their prayer granted, and the order was made by the county court accordingly.

The remonstrants appealed to the circuit court where a trial was had on January 30, 1930. The same findings were made by the circuit court which were made by the county court, and an order establishing the district was

made. A motion for new trial was filed by the remonstrants alleging, first, that the decision of the court is contrary to law, and, second, that the decision of the court is contrary to the law and the evidence. Motion for new trial was overruled, and this appeal is prosecuted to reverse the judgment of the circuit court.

There is very little dispute about the facts, and it is unnecessary to set out the evidence.

Both the county court and the circuit court found that the territory described in the petition and shown on the plat comprised an area of more than five square miles; that the petition was signed by a majority of the qualified electors residing within said territory and all owners of cultivated land within said district who are qualified electors of Clark County but reside without the district; that the petition was accompanied by the certificate of the clerk of the county court, stating that sufficient money had been deposited to pay the expense of making the order prayed for; that the poll books verified the statement that a majority of the qualified electors of said subdivision of Clark County have signed the petition, and the court also found that the petition particularly described the boundaries of the territory and that all the requirements of act 17 of 1905 and amendments thereof have been strictly and fully complied with. Not only did both courts find these facts, but we think there was ample evidence to justify the findings.

Appellants contend that the case of *Palmer* v. *Palmer*, 132 Ark. 609, 202 S. W. 19, did not construe the act because the question here presented was not raised or passed on. The court in that case passed on the constitutionality of the act and also held in speaking of the amendments: "This, in effect, amended section 1 of act 17 of 1905 the same as if it had directly amended section 1 of act 17. It is insisted that act 262 of the Acts of 1905 repealed section 1 of act 17 of 1905, and that the amendment of a repealing statute does not have the effect of reviving the original statute amended. In support of

this contention, § 7796 of Kirby's Digest is cited, which is as follows: 'When a statute shall be repealed and the repealing statute shall afterwards be repealed, the first statute shall not thereby be revived except by express words.' This section of the statute has no bearing, because act 262 was not a repealing statute. It was an amending statute. It amended section 1 of act 17 of the Acts of 1905 by excluding Amity Township and other territory in Clark County from the effect of the act. * * * The effect of the passage of act 183, Acts 1915, was to set section 1 of said act in the place and stead of section 1 of act 17, Acts 1905. * * * It is quite clear that the Legislature intended by act 183, Acts 1915, to fully and completely reinstate act 17, Acts 1905, so as to permit Clark County or any subdivision thereof not less than five square miles to be organized into districts to prevent hogs from running at large.''

We think the above case practically settles the questions involved in the present case. It is contended, however, that ''subdivision'' means a township, but when the entire act is construed, its object and purpose, it is clear that ''subdivision'' was used in the sense of ''part.''

''It is indispensable to a correct understanding of a statute to inquire first, what is the subject of it, what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, a key is found to all its intricacies; general words may be restrained to it and those of narrower import may be expanded to embrace it to effectuate that intent.'' Lewis, Sutherland, Statutory Construction, 2d Ed. Vol. 2, § 347.

This court has held: ''That, in construing statutes, the intention of the Legislature is a fit and proper subject of inquiry is too well settled to admit of doubt. This intention is to be collected either from the words, the context, the subject-matter, the effects and consequences, or the spirit and reason of the law and other acts *in pari materia*. * * * Such a construction ought to be put upon

the statute as may best answer the intention which the lawmakers have in view, and this intention is sometimes to be collected from the cause or necessity of making the statute, and sometimes from other circumstances; and whenever such intention can be discovered, it ought to be followed with reason and discretion, in the construction of the statute, although such construction seems contrary to the letter of the statute. And such construction ought to be put upon it as will not suffer it to be eluded.'' *Turner* v. *Ederington,* 170 Ark. 1155, 282 S. W. 1000.

In construing a statute this court recently said: ''Every such instrument is adopted as a whole, and a clause which, standing by itself, might seem of doubtful import may yet be made plain by comparison with other clauses or portions of the same law. It is therefore a very proper rule of construction that the whole is to be examined with a view to arriving at the true intention of each part. * * * If any section of a law be intricate, obscure or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections and finding out the sense of one clause by the words or obvious intent of another.'' *Lybrand* v. *Wafford,* 174 Ark. 298, 296 S. W. 729.

Act No. 17, which is here involved, provides that it shall be the duty of the petitioners to particularly describe and clearly designate the boundaries of the district proposed to be formed. There would be no occasion at all to advise the court of the description of a political township nor to designate its boundaries. This requirement is only necessary when a part of the county is to be formed into a district and would not be necessary if the petitioners sought to create a district whose boundaries were the same as the political township.

Some courts have held that the word ''subdivision'' means ''precinct'' or ''township,'' but it will be found that in most of those cases, if not all, the stock law provided for an election and the courts held that there was

no provision in the law for elections except in precincts, townships and municipalities.

Again, this act provides that the district shall consist of not less than five square miles. There might be a township which would not contain five square miles, and if subdivision meant a precinct or township, then any township or precinct of less than five square miles could not form a stock district although that particular territory might need it more than any other in the county. If subdivision meant township or precinct, not only would a township with less than five square miles be unable to organize, but it could not be joined to some other township because, if subdivision means what appellants contend that it does, every district formed in the county would have to consist of a township or precinct and could not be more or less. Certainly the Legislature did not intend to pass a law for the creation of stock districts in such a manner that they could not be created. The act of 1905 provided that the district should consist of not less than five square miles, but the act of 1915 says not less than five miles square. If they intended what they said in that act, five miles square and subdivision meant a township or precinct, then it seems to be impossible to create a district under the law. Five miles square would not fit any township or precinct in Clark County, and if it means five miles square, then the law would be absurd, and the Legislature evidently did not intend this.

We said in *Palmer* v. *Palmer,* 132 Ark. 609, 202 S. W. 19: "It is quite clear that the Legislature intended by act 183, Acts 1915, to fully and completely reinstate act 17, Acts 1905, so as to permit Clark County or any subdivision thereof not less than five square miles, to be organized into a district." Any other construction or interpretation of this statute would make it inoperative.

"Where there is no way of reconciling conflicting clauses of a statute, and nothing indicating what the Legislature regarded as of paramount importance, force should be given to those clauses which would make the

statute in harmony with other legislation on the subject. * * * In order to conform to the legislative intent, errors in an act may be corrected or words rejected and others substituted." *McDaniel* v. *Ashworth,* 137 Ark. 280, 209 S. W. 646. The cardinal rule of interpretation is the ascertainment of the meaning of the law-makers as expressed in the language which they have used.

"It is the duty of every court, when satisfied of the intention of the Legislature, clearly expressed in constitutional enactment, to give effect to that intention, and not defeat it by adhering too rigidly to the mere letter of the statute, or to technical rules of construction, and any construction should be discarded that would lead to absurd consequences. * * * The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the Legislature apparent by the statutes; and if the words are sufficiently flexible to admit of some other construction, it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." *State ex rel.* v. *Trulock,* 109 Ark. 556, 160 S. W. 516; *Summers* v. *Road Imp. Dist. No. 116,* 160 Ark. 371, 254 S. W. 696.

It was manifestly the intention of the law-makers to enable Clark County or any part of Clark County to organize a stock district, and we think that the construction contended for by appellants would make it impossible to organize a part of the county into a district. The petitioners complied with the act in every respect.

The judgment of the circuit court is affirmed.