CHENEY, COMMISSIONER *v.* EAST TEXAS
MOTOR FREIGHT, INC.

5-2408                                       346 S. W. 2d 513

Opinion delivered May 29, 1961.

676

*Herrn Northcutt* and *Lyle Williams,* for appellant.
*Warren & Bullion,* for appellee.

ED. F. McFADDIN, Associate Justice. The ultimate question presented on this appeal is whether the appellee is liable for additional State income taxes as claimed by the appellant.

Appellee East Texas Motor Freight, Inc. (hereinafter called "East Texas") is a Texas corporation engaged in interstate and intrastate transportation of property as a common carrier. It operates partly within and partly without Arkansas, and is duly certificated by the Interstate Commerce Commission and the Arkansas Commerce Commission, and is subject to the regulation of both agencies. At all times herein involved East Texas was authorized, and doing business in Arkansas, as such carrier. Appellant J. Orville Cheney (hereinafter called "Commissioner") is, and was at all times herein involved, the Commissioner of Revenues of the State of Arkansas and charged by law with enforcing the Arkansas Income Tax Law (Act No. 118 of 1929 as amended and as found in § 84-2001 *et seq.,* Ark. Stats.).

East Texas operates on a fiscal year basis ending on June 30th; and for the fiscal years ending in June 1955, 1956, 1957, and 1958 (the four years here involved) East Texas made its Arkansas Income Tax return to the Commissioner and paid the tax as shown on such return. By letter of April 27, 1959, the Commissioner advised East Texas that an additional tax was due by it for each of these four years because of the method East Texas had used in figuring depreciation. The Commis-

sioner also advised East Texas that an additional tax was due for the year 1958 because of certain sales tax payments East Texas claimed it had made to the State of Texas. Upon receipt of the letter by East Texas, there ensued a series of conferences between the representatives of East Texas and the representatives of the Commissioner, with each side trying without success to convince the other. Finally, East Texas paid the claimed additional tax of $3,426.99, and filed this suit for refund, alleging that in seeking such refund East Texas was proceeding under § 84-2031 *et seq.*, Ark. Stats. The Trial Court rendered a decree in favor of East Texas, and the Commissioner prosecutes this appeal, presenting, *inter alia,* the points now to be discussed.

I. *The Method For Determining Depreciation.* In the returns filed for each of the four years here involved, East Texas had claimed depreciation according to the "declining balance" method (§ 84-2016(f)(2), Ark. Stats.); and this method[1] allowed a larger amount of depreciation for each of these four years than did the "straight line" method. The Commissioner insisted that East Texas should have calculated and claimed the said depreciation on the "straight line" method, being § 84-2016(f)(1), Ark. Stats.; and on this "straight line" method East Texas would owe a larger tax.[2] As authority for his position, the Commissioner relies on § 84-2003(e), Ark. Stats., which says that utilities and some

[1] The "declining balance method" is stated in the cited statute to be: ". . . the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the method described in paragraph (1), . . ." *i.e.,* "straight line" method.

[2] A witness for East Texas explained the difference between the declining balance method and the straight line method as follows: "Well, the depreciation method employed by East Texas Motor Freight was the declining balance method and I can illustrate the difference by using a simplified cost. Let's assume an item cost a thousand dollars and was to be depreciated over a five year life. Normal, straight line depreciation would be 20% per year or $200.00 per year. On the accelerated basis you double the percentage and apply it to the declining balance. The first year it would be 40% of the thousand dollars or $400.00. Then, the following year it would be 40% of the remaining balance or 40% of $600.00, making $240.00. Then, the third year you would have a basis of the declining balance, which would be $360.00 and 40% of that would be $144.00. The depreciation for each year continues to get less . . ."

other corporations (such as East Texas) must use the method of calculating income tax "according to the standard classification of accounting of the Interstate Commerce Commission."

Thus the question here posed is whether East Texas is free to calculate and claim depreciation as it desires under § 84-2016(f)(2), Ark. Stats., or whether the State may prescribe—as the Commissioner claims—that depreciation be calculated by East Texas according to the standard classification of accounting of the Interstate Commerce Commission, which latter is the "straight line" method. We hold that § 84-2003(e), Ark. Stats. is valid as applied to this case, and that East Texas must use the same method in calculating its depreciation on its Arkansas income tax return as is prescribed by the standard classification of accounting of the Interstate Commerce Commission. The pertinent portion of § 84-2003(e), Ark. Stats., as here involved, reads:

"(e) Mode of determining taxable income of utilities. The basis of ascertaining the net income of every corporation engaged in the business of operating a steam or electric railroad, express service, telephone or telegraph business, or other form of public service, when such company is required to keep records according to the standard classification of accounting of the Interstate Commerce Commission, shall be the 'net income' of such corporation as shown by their records kept in accordance with that standard of classification of accounts, . . ."

The constitutionality of the section, of which the above copied language is a part, was sustained by this Court in *Cook, Commissioner* v. *K. C. So. Ry. Co.*, 212 Ark. 253, 205 S. W. 2d 441; and *certiorari* denied by the Supreme Court of the United States in 333 U. S. 873, 68 S. Ct. 902, 92 L. Ed. 1150. In that case we held that the statute fixing the method of determining taxable income of interstate utilities was not shown to be discriminatory. And in the later case of *Commissioner of*

*Revenues* v. *Trans-Continental Bus System*, 227 Ark. 811, 301 S. W. 2d 569, there was involved the "direct accounting" method of allocating operating expenses claimed by the bus company as opposed to the statutory formula of miles in Arkansas as compared to total miles of the system. We again sustained the statute, and concluded: "We accordingly conclude that appellee failed to sustain the burden of proving the statutory formula oppressive and discriminatory, or that they have been deprived of any constitutional right by reason of its application in the instant case."

Aside from the matter of constitutionality, East Texas argues that § 84-2003(e), Ark. Stats. (which comes to us from § 3 of Act 118 of 1929) has been superseded and amended by § 84-2016(f), which was added to the Income Tax Law by Act 156 of 1957. But we do not agree with East Texas' contention. Act 156 of 1957 is captioned: "An Act to Amend Section 13(f) of Act 118, Approved March 9, 1929, and for Other Purposes," which section was concerned with depreciation generally, and did not apply to particular corporations such as those concerned in Section 3(e) of the Act of 1929 (§ 84-2003(e), Ark. Stats.); and that section governs here. If East Texas were a business corporation not engaged as a common carrier and not subject to regulation by the Interstate Commerce Commission and not certificated by the State of Arkansas, then East Texas could claim depreciation under § 84-2016(f), Ark. Stats., that is, under Act No. 156 of 1957. But East Texas is a corporation of a particular status, in that it is a corporation engaged in public service under the control of the Interstate Commerce Commission and required to keep its accounts in accordance with the standard classification of accounts of the Interstate Commerce Commission; so East Texas is governed by the particular language of § 84-2003(e), Ark. Stats. instead of the general language of § 84-2016(f), Ark. Stats.

It was not the intention of the Legislature that the Act 156 of 1957 should amend or supersede Section 3(e)

of Act 118 of 1929. Our cases hold with uniform refrain, as stated by Chief Justice Hill in *Lawyer* v. *Carpenter,* 80 Ark. 411, 97 S. W. 662:

"A general law does not apply where there is another statute governing the particular subject, irrespective of the date of either the general or particular law; neither repeals the other; the particular legislation covers the narrower field where it is applicable. *Dunn* v. *Ouachita Valley Bank,* 71 Ark. 135; *Mills* v. *Sanderson,* 68 Ark. 130; *Ex parte Morrison,* 69 Ark. 517; *Chamberlain* v. *State,* 50 Ark. 132; *State* v. *Kirk,* 53 Ark. 339; *Thompson* v. *State,* 60 Ark. 59."

This was reiterated in *Faver* v. *Golden, Judge,* 216 Ark. 792, 227 S. W. 2d 453, wherein Justice Millwee said:

"We have held that a general law does not apply where there is another statute governing the particular subject, irrespective of the dates of their passage. *Lawyer* v. *Carpenter,* 80 Ark. 411, 97 S. W. 662. It is also well settled that repeals by implication are not favored and that two statutes should be construed so as to give effect to both, if possible."

We therefore conclude that the depreciation which East Texas was entitled to claim for each of the four years here involved is the depreciation according to the Uniform System of Accounts, as prescribed by the Interstate Commerce Commission; and that the Commissioner was correct in this matter of depreciation.

II. *Deduction Of Certain Sales Tax Items.* In figuring its net income for 1958 East Texas claimed as a deduction the amount of retail sales taxes it had paid in the taxable year to the State of Texas on motor vehicles purchased in that State.[3] The Commissioner claimed

[3] The Texas tax was imposed by Act of 1950, 51 Leg. 1 C.S. p. 10, Chap. 2 Art. VI (as found in Title 122, Art. 7047k-1 of Vernon's Civil Statutes of Texas), and is called the "Texas Retail Sales Tax," and applies only to motor vehicles. The tax was increased by Act of 1959, 56 Leg. 3rd C.S. p. 187, Ch. 1 (as found in Title 122 A, Art. 6.01 of Vernon's Civil Statutes of Texas).

that East Texas could not claim such taxes as deductions in the taxable year; but, instead, East Texas should add the amount of the taxes paid to the cost of the motor vehicles purchased, and thus the tax would be a part of the capital account and depreciated as such.

Because of what we have said in Point I, *supra,* we must also agree with the Commissioner on this point, since the requirements of the Uniform System of Accounts of the Interstate Commerce Commission prescribe such method regarding sales taxes. The rules for the deduction of taxes and licenses are contained in § 182.5200 *et seq.* of the rules prescribed by the Interstate Commerce Commission on Uniform System of Accounts. These rules allow many taxes to be deducted as expenses in the year paid; but as regards sales taxes the said rules provide:

"All sales and excise taxes not provided for in these accounts shall be included in the account charged with the cost of the material, equipment or services to which the taxes apply."

So under the plain wording of the Uniform System of Accounts prescribed by the Interstate Commerce Commission, the Commissioner is correct on this matter of retail sales taxes in this case.

III. *Exhausting Of Administrative Remedies.* The Commissioner insists that East Texas did not exhaust its administrative remedies before filing this suit in the Chancery Court and, therefore, cannot maintain this suit. The rule is uniform that administrative remedies must be exhausted before judicial relief can be sought. We have a number of cases on that point, some of which are: *Cook, Commr.* v. *Wofford,* 209 Ark. 824, 192 S. W. 2d 550; *LeCroy* v. *Cook, Commr.,* 211 Ark. 966, 204 S. W. 2d 173, 1 A.L.R. 2d 1032; *City of Little Rock* v. *Griffin,* 213 Ark. 465, 210 S. W. 2d 915; *Dixie Downs, Inc.* v. *Arkansas Racing Comm.,* 219 Ark. 356, 242 S. W. 2d 132; and *Consumers Co-op. Addn.* v. *Hill,* 233 Ark. 59, 342 S. W. 2d 657. There is no weakening of this rule by failure to decide

this point in this case; but there is a division in the Court as to whether the administrative remedy had been exhausted, so we find it better to rest the opinion on the ultimate question presented, rather than on the procedural point. But nothing herein is a weakening of the rule that administrative remedies must be exhausted before judicial relief can be sought; and nothing herein is a decision on whether administrative remedies had been exhausted in the case at bar. The course we have pursued is like that adopted by Judge Holtzoff in *Burnham Chemical Co.* v. *Krug,* 81 F. Supp. 911, in that we have decided the ultimate question rather than the threshold question.

### CONCLUSION

The decree of the Chancery Court is reversed and the cause is remanded, with directions to dismiss the complaint filed by East Texas and assess all costs against it.